SO ORDERED: December 17, 2008.

_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CASEY & DENISE DUNCAN | ) | CASE NO. 08-8807-AJM-13 |
| | ) | |
| Debtors | ) | |

**ORDER DENYING DEBTORS' MOTION
TO AVOID WHOLLY UNSECURED MORTGAGE
OF AMERICAN GENERAL FINANCIAL SERVICES**

*Background*

The Debtors filed this chapter 13 case on July 24, 2008 (the "Petition Date") and as of the Petition Date, resided at 801 Helm Drive, Avon Trails, Section Three, Lot 108, Avon, Indiana (the "Residence"). The Debtors scheduled Everhome Mortgage Company ("Everhome") and American General Financial Services ("American General") as the holders of the first and second mortgages respectively on the Residence and scheduled the Residence having a value of $104,000. Since Everhome was scheduled as having a secured claim of $108, 500, [1] the Debtors' chapter 13 plan provided that the Debtors would file a motion to strip off of American General's second mortgage

---

[1] Everhome filed a proof of secured claim on November 21, 2008 in the amount of $108,993.62.

1

(scheduled at $10,800) under Section 506 of the Bankruptcy Code.  That motion was filed on August 13, 2008 to which American General objected.  Hearing on the Debtors' Motion and American General's objection was held on December 3, 2008 wherein the Debtors appeared in person and by counsel Charleyne Gabriel; American General Financial Services ("American General") appeared by counsel Stephen Andrews.  For the reasons stated below, the Court sustains American General's objection and DENIES the Debtors' Motion.

### *Strip Off of Wholly Unsecured Mortgage under Bankruptcy Code §506(d)*

A confirmable chapter 13 plan may modify the rights of holders of secured claims under §1322(b)(2) but must provide in part that the amount to be distributed on account of such secured claim is not less than the "allowed" amount of such claim under §1325(a)(5)(B)(ii).  The "allowed" amount of the secured claim typically is the fair market value of the collateral which secures the claim as determined under the §506(a) "cramdown" provision.  However, §1322(b)(2) prohibits modification, and thus, "cramdown" of a claim secured only by a security interest in real property that is the debtor's residence, although it allows "cramdown" of such a claim if the claim is wholly unsecured and there is no collateral value to support it.   See, *In re Gyger*, Case No. 00-14683-AJM-13 (entry of May 2, 2001) and cases cited therein.  Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") significantly changed consumer provisions within the Bankruptcy Code, the antibifurcation provision of §1322(b)(2) was not altered.  There is no dispute that: (1) both Everhome's and American General's mortgages are valid and (2) American General's claim is secured only by the Residence.  The only issue here is whether there is any value in the Residence beyond the amount of Everhome's first mortgage to support any portion of American General's second mortgage.  If the Residence is worth even  $1 more than Everhome is owed on its first mortgage, there is value to support American General's second mortgage and payment of American General's claim must be provided for in full for the Debtors' chapter 13 plan to be confirmed.  Conversely, American General's second mortgage can be stripped off only if there is no value to support it, i.e, the value of the Residence is less than or equal

to what Everhome is owed on its first mortgage.

Thus, the value of the Residence is dispositive. To that end, the Debtors' evidence of value was presented in the form of testimony by Debtor Casey Duncan (the "Debtor"). American General presented the testimony and appraisal of Mr. Aaron Magner, a professional appraiser.

### *The Debtors' Valuation of the Residence*

The Debtor's method of appraising the property was through the submission of Exhibit A showing all homes that were sold in the Avon Trails subdivision ( subdivision in which the Residence is located) between June 1st and December 1st, 2008. Exhibit A was in 15 pages and listed fifteen (15) homes which had been sold (each of the 15 sales was set out on its separate page). Taking these 15 homes that had been sold, the Debtor totaled the number of bedrooms, the number of bathrooms, the square footage, the listing price, the listing price per square foot, the sale price, the sales price per square foot, the percentage of the sales price to listing price and finally, the number of days on the market. Adding up all these numbers and dividing by 15 established that the average home sold in the Avon Trails subdivision during this period of time had (1) 3 bedrooms, (2) 2 baths, (3) 1,438 square feet, (4) an average listing price of $107,763; (5) an average listing price per square foot of $76.70; (6) an average sales price of $105,213; (7) an average sales price per square foot of $74.97, (8) an average sales price to listing price of 97%; and (9) an average of 78 days on the market. Based upon these calculations the Debtor testified that he believed the value of the Residence was roughly $105,000. (Using the average sales price per square foot, $74.97, times the square footage of the Debtors' home, 1,420, yields a value of $106,429.)

"Fair market value" is what a willing buyer will pay a willing seller for the property in an arms-length transaction. Here, the Court finds that the three (3) sales found on pages 13, 14 and 15 of Debtors' Exhibit A are not indicative of "fair market value" because they were distressed sales of bank owned properties that were foreclosures and therefore not determined to be arms-length transactions. And, to determine "fair market value" here, the sales of homes described in Debtors' Exhibit A should be

3

substantially similar to the Residence in order to compare "apples to apples". The Residence is a 3-bedroom, 2 bath, 1,420 square foot ranch home.  However,  four (4) sales found on pages 1, 3, 8 and 11 of Debtors' Exhibit A are not indicative of fair market value because they all are 2-story residences.

After disregarding seven (7) of the 15 sales described in Debtors' Exhibit A, the Court finds that the sales of the remaining eight (8) properties are evidence of fair market value of the Residence and should be considered as these are the only ranch style homes qualify as arms-length transactions. Attributes of those 8 properties are summarized as follows:

| Page on Exh A and Property Location | # Bedrms | # Baths | Total Sq.Ft. | Sales Price | Sales Price Per Sq. Ft. | Value of Residence based on particular property's price per square foot [2] |
|---|---|---|---|---|---|---|
| Pg 2– 921 Helm Drive, (same street as Residence) | 3 | 2 | 1420 | $123,400 | $86.90 | $123,400 |
| Pg 4 – 771 Helm Drive (same street as Residence) | 3 | 2 | 1256 | $114,900 | $91.48 | $129,901 |
| Pg 5 – 9675 Thomas Lane | 3 | 2 | 1248 | $114,000 | $91.34 | $129,702 |
| Pg 6 – 9796 Thomas Lane | 3 | 2 | 1406 | $112,000 | $79.65 | $113,103 |
| Pg 7 – 701 Helm Drive (same street as Residence) | 3 | 2 | 1211 | $108,000 | $89.18 | $126,635 |
| Pg 9 – 9850 Rhodes Lane | 3 | 2 | 1356 | $103,500 | $76.32 | $108,374 |

---

[2] This number is computed by taking the price per square foot of the particular property, and applying it to the Residence which has 1,420 square feet.  For example, the price per square foot for property #2 located at 921 Helm Drive was $86.90.  Multiplying this figure by the number of square feet of the Residence yields $123,398, ($86.90 times 1420) rounded to $123, 400.

| Page on Exh A and Property Location | # Bedrms | # Baths | Total Sq.Ft | Sales Price | Sales Price Per Sq. Ft. | Value of Residence based on particular property's price per square foot |
|---|---|---|---|---|---|---|
| Pg 10 – 9762 Trail Drive | 3 | 2 | 1212 | $103,000 | $84.98 | $120,671 |
| Pg 12– 873 Hollowood Lane | 3 | 2 | 1212 | $99,000 | $81.68 | $115,985 |

As is evident from the chart above, the highest price per square foot paid for any of the 8 comparable properties was $91.48 (771 Helm Drive) and the lowest was $76.32 (9850 Rhodes Lane). Even if these high and low prices per square foot were applied to the Residence, the Residence would yield a "low" estimated value of $108,374 (based on a price per square foot of $76.32) and a "high" estimated value of $129,901(based on a price per square foot of $91.48). Consequently, no comparable sale contained within Exhibit A would establish a value of $105,000 for the Residence.

Because there are foreclosure sales occurring in the subdivision in which the Residence is located, the Court had reservations about whether the number of neighborhood foreclosures negatively affected even those homes that were on the market but not in foreclosure, thus bringing the prices down. However, in reviewing the sales of the comparable properties that the Court has just discussed, the Court finds that some properties actually sold for more than the listing price and some sold for the listing price or slightly below the listing price, as demonstrated below:

| Pg of Debtors' Exh A and Property Location | List price | Sales price | Variance |
|---|---|---|---|
| Pg 5 - 9675 Thomas Lane | $112,500 | $114,000 | $1500 |
| Pg 10- 9762 Trail Drive | $100,000 | $103,000 | $3000 |
| Pg 4 – 771 Helm Drive | $114,900 | $114,900 | Even |
| Pg 2- 921 Helm Drive | $123,900 | $123,500 | ($500) |

5

With respect to the other properties, there was no major difference between the listing prices and the sales prices. Consequently, the Court finds that the homes were selling for a price close to the listing price.

### *American General's Value of the Residence*

American General called an expert witness to testify as to the value of the Debtors' home, and submitted an appraisal as Creditor's Exhibit 1 which established a value for the property of $120,000. All of the comparable properties used by American General's expert were in close proximity to the Residence, with two of them being on the same street. The Court notes that comparable Sale #3 (property located at 9772 Centennial Drive) was over a year old and normally comparables of more than a year old would not be used. However, based upon comparable Sale #1 (property located at 921 Helm Drive which sold for $123,400) and Sale #2 (property located at 771 Helm Drive which sold for $114,900), it would seem that the value of $120,000 would be justified as a Fair Market Value for the Residence.

As a test with respect to the appraisal presented by American General, the Court added up the average per square foot sales prices for the eight (8) properties that the Court deemed to be comparable to the Residence (shown in the first chart, above), i.e, those ranch homes with 3 bedrooms and 2 baths. After dividing the number by 8, the Court finds that the average square foot price for these 8 comparable sales was $85.19. Multiplying that number by the 1,420 square feet in the Residence yields a value of $120,969.80. This value is only slightly more than the value reached by American General in its Exhibit #1. The Court also notes that the Debtors purchased the Residence in 2001 for approximately $118,000 and that the Residence has an assessed value, for tax purposes, of $116,500. (The prior year's assessed value had been $123,200.)

Considering all the above factors, the Court finds that American General's Exhibit I is more persuasive as evidence establishing the Residence's value and thus finds that the Residence has a fair market value of $120,000. Testimony at trial established that Everhome's outstanding first mortgage

6

was in the amount of $108,900. Thus, there is at least $11,100 worth of equity to support American General's second mortgage [3] and thus, American General's second mortgage is not wholly unsecured. Consequently, the Court DENIES the Debtors' Motion to Avoid Wholly Unsecured Mortgage of American General.

# # #

Distribution:

Charleyne Gabriel, Attorney for the Debtors
Steve Andrews, Attorney for American General
Robert Brothers Chapter 13 Trustee
Nancy J. Gargula, United States Trustee

---

[3] American General filed a proof of secured claim on December 3, 2008 in the amount of $11,254.66.